UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

JAIME S. VINING,

    Plaintiff,

v.                                                                   Civ. No. 15-477 MCA/GJF

CAROLYN W. COLVIN, Acting
Commissioner of the
Social Security Administration,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court upon Plaintiff Jaime Vining's "Motion to Reverse or Remand Administrative Agency Decision, with Supporting Memorandum" ("Motion") [ECF No. 23]. Having meticulously reviewed the entire record and being otherwise fully advised, the undersigned finds that the Administrative Law Judge ("ALJ") erred in rejecting certain important medical opinions of Plaintiff's treating physicians without proper explanation. A straightforward application of the well-known "treating physician rule" demonstrates that the ALJ's decision falls short of the justification the Tenth Circuit requires before an ALJ can reject material opinions from a treating physician. For the following reasons, the undersigned recommends that Plaintiff's Motion be GRANTED and the case REMANDED for further proceedings consistent with this recommended disposition.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits and supplemental security income on May 8, 2013, alleging disability beginning on March 1, 2012. Administrative R. ("AR") 16, ECF No. 17. Both claims were initially denied on September 24, 2013, and upon reconsideration on March 14, 2014. Plaintiff then filed a written request for hearing on March

1

26, 2014.  A hearing was held on January 15, 2015 in Albuquerque, New Mexico before ALJ Ann Farris.  At the hearing, the ALJ heard testimony from Plaintiff, as well as Mary Diane Weber, an impartial vocational expert.  AR 16.

On February 25, 2015, the ALJ issued a decision, finding Plaintiff was not disabled under the Social Security Act, from March 1, 2012, through the date of the decision.  AR at 32.  Plaintiff filed a request for review by the Appeals Council on March 17, 2015, *see* AR 14-16, which was denied on April 23, 2015.  AR 8-12.  Therefore, the ALJ's decision became the final decision of the Commissioner.

## II.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether the decision is supported by substantial evidence and whether the correct legal standards were applied.  *See* 42 U.S.C. § 405(g) (2015); *see also Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).  "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'"  *See Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)); *see also Hamlin*, 365 F.3d at 1214 ("[B]ecause our review is based on the record taken as a whole, [the Court] will meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial …").

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988)). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted). "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III.   SUMMARY OF ARGUMENTS

Plaintiff argues that the ALJ committed reversible legal error for the following reasons: (i) the ALJ did not give any weight to the opinions of Plaintiff's treating physicians nor adequately explained why; (ii) the ALJ did not give any weight to the opinions of Plaintiff's treating therapist nor adequately explained why; (iii) the ALJ erred in using the Medical Vocational Guidelines to deny Plaintiff benefits; (iv) the ALJ erred in failing to find that Plaintiff's migraine headaches constituted a severe impairment; and (v) the ALJ erred in failing to consider the effect that Plaintiff's absences, caused by her migraine headaches and fibromyalgia, would have on her occupational base. *See* Pl.'s Mot. 1-23, ECF No. 23.

Defendant contends the ALJ evaluated the record as a whole, including the medical source opinions and Plaintiff's complaints, and determined Plaintiff could perform a restricted range of light work. *See* Def.'s Br. in Resp. to Pl.'s Mot. to Reverse and Remand the Agency's Administrative Decision 8-19, ECF No. 27.

## IV.   APPLICABLE LAW AND SEQUENTIAL EVALUATION PROCESS

### A.   Legal Standard

For purposes of Social Security disability insurance benefits, the term "disability" means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015). To determine if an individual is disabled, the Social Security Administration utilizes a five-step sequential evaluation process, 20 C.F.R. § 404.1520 (2015), with each step being followed in order. *Id.* § 404.1520(4). If it is determined that the individual is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step. *Id.*

The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).

> At step one, the claimant must show "that he is not presently engaged in substantial gainful activity;" at step two "that he has a medically severe impairment or combination of impairments;" at step three that the impairment is "equivalent to a listed impairment;" and, at step four, "that the impairment or combination of impairments prevents him from performing his past work."

*Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (quoting *Williams*, 844 F.2d at 750-52). At step five, "the burden shifts to the Commissioner to show the claimant retains sufficient

residual functional capacity (RFC) to perform work in the national economy, given his age, education, and work experience." *Id.* (quoting *Williams*, 844 F.2d at 751).

**B.     ALJ Decision**

On February 25, 2015, the ALJ issued a decision denying Plaintiff's application for benefits. In doing so, the ALJ conducted the five-step sequential evaluation process. AR 20-32. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2012, the date of her alleged disability onset. At step two, the ALJ determined Plaintiff had the following severe impairments: affective disorders, personality disorders, and fibromyalgia. The ALJ found these impairments "cause[d] more than minimal limitation in [Plaintiff's] ability to perform basic work activities and are therefore severe." AR 25.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1.[1] AR 18-19.[2] In reaching this conclusion, the ALJ reviewed the medical evidence and considered the opinions of the State agency medical consultants. First, the ALJ noted there is no listing for fibromyalgia in the Social Security Code. Moving to Plaintiff's mental impairments, the ALJ noted that Plaintiff experiences "no restriction in her activities of daily living." AR 19. The ALJ based this on Plaintiff's adult function report, which indicates Plaintiff is able to handle significant familial responsibilities, including maintaining the family home, managing family finances, cooking, driving her children to school, and attending the children's sporting activities. AR 19.

---

[1] The specific sections of the Code of Federal Regulations the ALJ referenced include: 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

[2] In the second paragraph of the fourth page of the ALJ's decision (AR 19), she begins a paragraph discussing fibromyalgia but does not complete it. The undersigned recommends that the missing language be included upon re-evaluation of this case by the ALJ, given the centrality of Plaintiff's physical impairments to a consideration of disability.

5

The ALJ also noted that Plaintiff experiences only "moderate difficulties" in social functioning, including irritability with family members, altercations with non-family members, and increased paranoia. AR 19. Therefore, the ALJ determined that Plaintiff's mental impairments did not satisfy the paragraph B criteria for Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders) because her mental impairments had not caused the requisite number of marked limitations and/or episodes of decompensation.[3] AR 20. The ALJ found: "[T]he claimant has experienced no episodes of decompensation that have been of extended duration. There is no evidence the claimant has been hospitalized for psychiatric treatment for an extended period of time." AR 20. Based on the evidence, the ALJ determined the paragraph C criteria were also not satisfied.[4] The ALJ found

---

[3] Paragraph B in Listings 12.04, 12.06, and 12.08 describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations described below must be the result of the mental disorder described in the diagnostic description. Paragraph B states:

    Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2.

[4] Paragraph C in Listing 12.04 describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations described below must be the result of the mental disorder described in the diagnostic description. Paragraph C states:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Paragraph C in Listing 12.06 describes impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations described below must be the result of the mental disorder described in the diagnostic description. Paragraph C states:

that there was no evidence to suggest the Plaintiff would be unable to function outside of her home. AR 20.

Before step four, the ALJ determined Plaintiff had the following residual functional capacity (RFC):

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and can make simple decisions with few workplace changes; have occasional superficial contact with the public and co-workers; and should avoid exposure to hazards and extreme cold. Light work involves lift up to 10 pounds frequently and 20 pounds occasionally; stand or walking up to 6 hours per day with normal breaks; and sitting about 2 hours in an 8 hour day.

AR 21. In support of this RFC assessment, the ALJ found that Plaintiff's "medically determinable impairments might be expected to cause some of the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible …" AR 28. In reaching this determination, the ALJ gave significant weight to Dr. Raul Young-Rodriguez, M.D., who examined Plaintiff at the request of the State agency and opined that "there was no clinical medical evidence to support a limitation of physical activity." AR 30. Additionally, the ALJ considered opinions from Plaintiff's counselor, primary care physician, and psychiatrist; she gave slight consideration to the opinions of Plaintiff's counselor, but did not give controlling weight either to the opinions of her primary care physician or to her psychiatrist. AR 29-30. The ALJ also considered Plaintiff's lack of hospitalizations, her own descriptions of her daily activities, and Global Assessment of Functioning scores given by various doctors that indicated the presence of only moderate symptoms. AR 30.

---

Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2.

At the fifth and final step, the ALJ noted that Plaintiff was born on March 16, 1980, and was therefore 31 years old as of the alleged disability onset date, which is considered to be a "younger individual" pursuant to 20 C.F.R. §§ 404.1563 and 416.963. AR 31. The ALJ further noted that Plaintiff has at least a high school education, is able to communicate in English, and stated that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocation Rules as a framework supports a finding that the [Plaintiff] is 'not disabled,' whether or not [she] has transferable job skills." AR 31. The ALJ determined Plaintiff would not be able to perform any past work because "[her] past relevant work all required more contact with co-workers and supervisors than her current residual functional capacity would allow." AR 31. Therefore, the ALJ asked the vocational expert "whether jobs exist in the national economy for an individual with the [Plaintiff's] age, education, work experience, and residual functional capacity." AR 32. The vocational expert testified that such an individual would be capable of working in the following jobs: flat work tier (DOT[5] 361.587-101), merchandise marker (DOT 209.587-034), and warehouse checker (DOT 222.687-010). Subsequently, the ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and therefore she was not disabled under the meaning of the Act from March 1, 2012 through the date of the decision. AR 32.

## V. DISCUSSION

The undersigned finds that the ALJ erred in rejecting, without adequate explanation, certain medical opinions of Dr. Higi, Plaintiff's treating primary care physician, and Dr. Nguyen, Plaintiff's treating psychiatrist.

---

[5] DOT stands for "Dictionary of Occupational Titles."

### A.    The Treating Physician Rule

"Under the regulations, the agency rulings, and our case law, an ALJ must 'give good reasons in [the] notice of determination or decision' for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)). The notice of determination or decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *5). When evaluating a treating source medical opinion as to the nature or severity of an individual's impairments, an ALJ should "[g]enerally, … give more weight to opinions from [claimant's] treating sources." 20 C.F.R. § 404.1527(d)(2). "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)).

In reviewing the opinions of a treating physician, an ALJ must proceed sequentially. *Watkins*, 350 F.3d at 1300. First, an ALJ must consider whether the medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *2). If the ALJ finds that the medical opinion is well-supported by such techniques, he or she must then confirm it is consistent with other substantial evidence in the record. *Id.* "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

The Tenth Circuit has explained that resolving whether a medical opinion is entitled to controlling weight does *not* conclude the analysis:

9

> [A]djudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 1527 and 416.927.

*Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *4). The factors set forth in § 1527 and 416.927 are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). Not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons – reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" – for whatever the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (10th Cir. 2004). If an ALJ rejects the medical opinion in its entirety, he or she must provide "specific, legitimate reasons" for doing so. *See Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).

1. **Dr. Marcus Higi, M.D.**

Dr. Higi served as Plaintiff's primary care physician for more than three years, during which time she was treated by him or his staff on at least 17 occasions. *See* AR 21, 553-55. Plaintiff first established care with Dr. Higi in April 2011. AR 435. Dr. Higi diagnosed Plaintiff with chronic fibromyalgia syndrome in January 2012. AR 411. In a "Fibromyalgia

Questionnaire" completed June 26, 2013, Dr. Higi listed four diagnoses in total: (1) fibromyalgia, (2) migraines-intractable, (3) borderline personality disorder, and (4) depression. AR 444-46. He assessed Plaintiff's pain as widespread in accordance with the criteria for fibromyalgia[6], and noted that this pain has persisted for at least three months. Dr. Higi listed the following additional symptoms that could be reasonably expected to result from the aforementioned diagnoses, including: nausea, vomiting, muscle pain and weakness, irregular bowels, agitation, and insomnia. Dr. Higi opined that Plaintiff would be unable to sustain an eight hour work day, or forty (40) hours per week in a seated position. He also opined that as a result of Plaintiff's impairments, she would have frequent absences from work, such as one day a week or multiple days in a month. AR 444-46.

To develop his medical opinion, Dr. Higi indicated he relied upon clinical interviews, objective clinical observations, chart reviews, and objective testing. He agreed his opinion was consistent with his treatment notes. AR 444-46.

In July 2014, Dr. Higi provided an updated medical opinion regarding Plaintiff's ability to do work-related activities. AR 522. He identified Plaintiff's symptoms as: profound daily pain, diffuse muscle pain, and severe migraines. As a result, he opined that Plaintiff could stand and walk less than two hours out of an eight hour workday; she could sit for less than two hours out of an eight hour workday; she was limited to lifting and carrying items below ten pounds; she needed to lie down at unpredictable times; and she was unable to complete prolonged computer work due to migraines. AR 522.

Regarding Dr. Higi's opinions, the ALJ stated merely that:

---

[6] Dr. Higi identified the following areas of Plaintiff's pain: pain in the left side of the body, pain in the right side of the body, pain above the waist, pain below the waist, axial skeletal pain, and pain in the cervical spine, thoracic spine, low back. Administrative. R. 445, ECF No. 17.

> As the claimant's treating primary care doctor, Dr. Higi's opinions are entitled to controlling weight if I find his opinions to be well supported by the additional medical evidence before me.  However, in this case, I do not find Dr. Higi's opinions are well supported, and I have not given controlling weight to his opinions regarding the presence and severity of the claimant's medical impairments in this matter.  The file does not contain evidence to support the level of severity that Dr. Higi assigns to the claimant's impairments.

AR 29.  The ALJ treated all of Dr. Higi's opinions as a single conglomeration rather than analyzing them individually.  And importantly, the ALJ's decision is silent on what if any weight she actually assigned to any of Dr. Higi's opinions.

The ALJ did, however, assign "significant" weight to a non-treating doctor, Dr. Paul Young-Rodriguez, M.D.  AR 30.  At the request of the state agency, Dr. Young-Rodriguez examined Plaintiff on – one occasion only – for fibromyalgia, borderline personality disorder, depression, anxiety, migraines, chronic fatigue, and chronic pain.  AR 505-08.  Dr. Young-Rodriguez found "[t]here is no clinical medical evidence noted today to support a limitation of physical activity."  AR 508.

When analyzed in tandem, it is clear that the ALJ's RFC determination is consistent with the results of Dr. Young-Rodriguez's one-time evaluation of Plaintiff.  Thus, it appears the ALJ adopted Dr. Young-Rodriguez's opinions to the extent they differed at all with those made by Dr. Higi.  While it is for the ALJ and not the Court to decide what weight to give conflicting evidence, an ALJ is required to explain with sufficient detail and specificity when she is giving other than controlling weight to the opinions of a treating physician.

The undersigned finds that the reasons the ALJ cited are not legally sufficient to support the ALJ's treatment of Dr. Higi's opinion.  Although the ALJ's findings may be enough to satisfy the first phase of the treating physician rule (requiring a finding as to whether the doctor's opinion is supported by medical evidence and/or is consistent with the record), they plainly do

not satisfy the second phase. If an ALJ finds a treating physician's opinion is not entitled to controlling weight, the opinion should not be rejected outright. The second phase of the treating physician rule requires the ALJ to give those medical opinions some deference. Furthermore, in deciding how much weight to assign the "non-controlling" opinion of a treating physician, an ALJ must assess those opinions in the context of at least some of the six *Watkins* factors. If, at that point, the ALJ decides to reject the treating physician's opinion in its entirety, he or she must provide specific, legitimate reasons for doing so.

In this case, with the exception of relying on Dr. Young-Rodriguez's opinions, the ALJ did not elaborate on which portions of Dr. Higi's opinions were not well supported by the medical evidence. Furthermore, she offered no discernible explanation for her decision not to assign controlling weight to Dr. Higi's opinions, other than that "[t]he file does not contain evidence to support the level of severity that Dr. Higi assigns to the claimant's impairments." AR 29. At most, the ALJ's reasons correspond to the third and fourth *Watkins* factors: (3) the degree to which the physician's opinion is supported by relevant evidence; and (4) consistency between the opinion and the record as a whole. *See Watkins*, 350 F.3d at 1301. However, without the required specific and detailed findings, it is not possible for this Court or the presiding judge or the Tenth Circuit to determine precisely what the ALJ considered in arriving at her determination that Dr. Higi's opinions were not entitled to controlling weight.

To emphasize: the ALJ did not comply with the second part of the treating physician rule analysis, which requires the ALJ to specify what lesser weight, if any, should be assigned to Dr. Higi's medical opinions. The ALJ's decision appears to be silent on that finding. The Court is unable to conclude which of the *Watkins* factors, if any, the ALJ considered in arriving at her conclusion to dispose of Dr. Higi's opinions with one boilerplate paragraph. Because the ALJ

failed to explain or identify what the claimed inconsistencies were between Dr. Higi's opinions and the other substantial evidence in the record (aside from the contradictory opinions of Dr. Young-Rodriguez), her reasons for essentially rejecting Dr. Higi's opinions are not sufficiently specific to enable this Court to meaningfully review her findings.

Apart from the ALJ's failure to explain what weight (short of controlling) she gave to Dr. Higi's opinions, there are at least two other specific areas where the Court is left with insufficient information essential to its review. First, in his July 22, 2014 "Medical Opinion Re: Ability to Do Work-Related Activities," Dr. Higi identified a series of postural limitations that would be caused by the diffuse pain, profound daily fatigue, and migraines associated with Plaintiff's physical impairments. AR 522. He specifically opined that those impairments would foreclose Plaintiff from standing and walking more than two hours in an eight-hour workday and from sitting more than two hours in the same workday. AR 522. He also opined that Plaintiff would need the freedom to shift at will between sitting and standing/walking. AR 522. He further opined that Plaintiff would need to lie down at unpredictable times during an eight-hour workday. AR 522. And he opined that Plaintiff would be "unable to do prolonged computer work due to migraines." AR 522. Yet so far as the Court can tell, the ALJ ignored and implicitly rejected each of those opinions and left her rejections of them wholly unexplained. The law permits an ALJ to give such opinions of a treating physician less than controlling weight, and even to reject them entirely, but the law requires an ALJ to adequately and specifically explain herself when doing so. The ALJ here came up well short of meeting this requirement.

A second example of the ALJ's legal error in applying the treating physician rule pertained to the opinions of Dr. Higi and Plaintiff's treating psychiatrist, Dr. Nguyen, with

respect to how much work they anticipated Plaintiff would miss due to her severe impairments. In his June 26, 2013 Fibromyalgia Questionnaire, Dr. Higi opined that the symptoms associated with Plaintiff's fibromyalgia "would result in frequent absences from work, such as one day a week or multiple days in a month." AR 444-46. More than a year later, in his July 22, 2014 Medical Opinion Re: Ability to Do Work-Related Activities, Dr. Higi opined that the symptoms of and treatment for Plaintiff's fibromyalgia would cause her to miss work more than three times per month. AR 522. For his part, Dr. Nguyen opined in his June 11, 2014 Mental Impairment Questionnaire that Plaintiff's conditions would cause her to miss work "about three times per month." AR 511-12. Four months later, in his October 6, 2014 Mental Impairment Questionnaire, Dr. Nguyen upgraded Plaintiff's mental condition and revised his opinion of how much work Plaintiff would miss down to "about twice a month." AR 711-13.

These are medical opinions from two of Plaintiff's treating physicians. And these opinions relate to a material aspect of whether Plaintiff could be employed in a full-time capacity. Indeed, when asked by the Plaintiff's attorney how being absent from work two or more days per month would affect the hypothetical person's occupational base, the vocational expert testified:

> It would eliminate them because employers typically will allow up to – it varies from company to company, depending on the absentee program. Up to one day per month might be acceptable; however, some companies might allow one day every couple of months or a quarter. That varies. But only up to one day would be acceptable. Anything more than that would not be tolerated.

AR 55-59. Yet, the ALJ did not specifically address these opinions and the reason(s) she was rejecting them. She appears to have simply lumped these opinions in with the rest of the medical opinions of Drs. Higi and Nguyen and swept them away with the same generalized, conclusory, boilerplate paragraphs. The law requires the ALJ to do well more than that. It is not the proper

role of this Court to speculate or hypothesize as to why the ALJ rejected without specific explanation certain material aspects of the treating doctors' opinions, nor to fill yawning gaps in the ALJ's analysis. It may well be that the ALJ cures these deficiencies on remand and then reaches the same overall conclusion of non-disability. But at least in that event, this Court and all other reviewing courts will be able to perform their judicial function under the appropriate standard of review.[7]

**CONCLUSION**

For the reasons stated above, the undersigned FINDS that the Commissioner's decision should be remanded for further proceedings, including proper consideration of Plaintiff's two treating physicians, Dr. Higi and Dr. Nguyen. Though it may be possible to assemble support for the ALJ's conclusion from parts of the record cited in the ALJ's decision, that is not the role of this Court.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion be **GRANTED** and the case be **REMANDED** to the Commissioner for further proceedings consistent with this recommended disposition.[8]

---

[7] On remand, the ALJ should also correctly complete the second full paragraph on page 4 of her decision. *See* AR 19. The reader cannot discern how long that paragraph was intended to be or all that it was intended to communicate. Perhaps the missing language would have explained why the ALJ chose not to consider Plaintiff's intractable migraines to be a severe limitation. Or perhaps the omitted language said something entirely different. Either way, given the centrality of Plaintiff's physical impairments to a consideration of whether she is disabled, this omission must be corrected.

[8] Because the undersigned is recommending remand on the basis that the ALJ failed to adhere to the treating physician rule, the undersigned did not analyze and makes no recommendations about the remaining claims raised by Plaintiff:

>  Claim 2: The ALJ failed to comply with SSR 06-03p by not giving any weight to the opinions of Martha Cummins-Bell, LMSW.
>  Claim 3: The ALJ erred in using the Grids to deny benefits to Claimant whose impairments are wholly non-exertional.
>  Claim 5: ALJ Farris committed reversible error by failing to consider the effect of absences caused by Claimant's migraine headaches and fibromyalgia on her occupational base.

*See* Pl.'s Mot. to Reverse or Remand Administrative Agency Decision, with Supporting Mem.

**IT IS SO RECOMMENDED.**

 _____
 THE HONORABLE GREGORY J. FOURATT
 UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

However, with respect to Claim 4, the undersigned finds that the ALJ did not commit reversible error in refusing to classify Plaintiff's migraine headaches as a severe impairment. The Tenth Circuit has held that "the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).